# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. SMITH, Minor.

UNPUBLISHED
March 27, 2018

No. 339061
Berrien Circuit Court
Family Division
LC No. 2015-000005-NA

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor child, AS, under MCL 712A.19b(3)(b)(*i*) (sibling of the child suffered sexual abuse caused by the parent), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to the parent), and (k)(*ii*) (the parent sexually abused a sibling of the child). We affirm.

## I. BACKGROUND

This case involves respondent's children from two marriages. Respondent was married to Rachel Smith[1] and had two children with her: a daughter, TP, born in 2000, and a son, KP.[2] Respondent and Rachel divorced in 2001, but respondent continued to have parenting time with TP until late 2012. Respondent started dating Sarah Parish in 2005, and they were married in 2013. Respondent and Sarah had one son together, AS, born in 2007. Respondent and Sarah remained married throughout these proceedings.

TP was three or four years old when respondent first began touching her inappropriately in her vaginal area. According to TP, respondent threatened to kill her brother, KP, if TP told anyone about the abuse. TP disclosed that she was seven years old when the first penile penetration occurred, which she described as "hurt[ing] really bad." The abuse continued until

---

[1] Because of the familial relationships, we will use first names when referring to respondent's wife and ex-wife.

[2] There is little information in the record regarding KP, outside of the fact that he is respondent's biological son.

TP was 12 years old and involved many instances of finger, mouth, penis, and object penetration. Additionally, TP reported that she would sometimes wake up with her pants around her ankles when she stayed overnight at respondent's home. The abuse continued until TP was 12 years old. The last incident occurred around December 2012, during which respondent inserted a foreign object into TP's vagina and did not remove it.

Respondent appears to have left TP's life—and the relevant geographic area—for a couple of years between December 2012 and December 2014, after which respondent returned and sought to reconnect with TP, who was now 14 years old. In the interim, TP had experienced a period of cutting behavior, had withdrawn from her family, and had struggled in school. Upon hearing of respondent's intentions to reconnect, TP disclosed the abuse. TP was examined by a sexual assault nurse examiner who discovered multiple areas of injury consistent with a history of sexual abuse, including vaginal penetration and insertion of foreign objects in TP's vagina. The examiner also discovered a plastic object embedded inside TP's vagina near her cervix, which was removed by an emergency room physician.

In January 2015, petitioner filed a petition in the trial court seeking termination of respondent's parental rights to TP and AS. Respondent was arrested in Van Buren County on charges of criminal sexual conduct in May 2015. Because respondent's abuse of TP spanned several years and residences, charges against respondent were also eventually brought in Berrien County. The trial court ordered that TP and AS remain in the care of their respective mothers and suspended respondent's parenting time to both children during his incarceration.

A bench trial was held in July 2015. The trial court received testimony regarding respondent's abuse of TP, which it described as unrefuted. The trial court also received testimony from Sarah regarding her plans if respondent was released from jail. Sarah testified that she did not believe that respondent abused TP and that she would not adopt a safety plan or take any precautions to prevent respondent from having unsupervised parenting time with AS. In fact, Sarah wanted respondent to move into the family home as soon as he was released from jail. Sarah testified that she had no source of income other than disability and that she relied on respondent and respondent's family for financial support. According to Sarah, respondent was a great father and had a strong bond with AS.

In August 2015, the trial court terminated respondent's parental rights to TP. The trial court determined that statutory grounds existed to terminate respondent's parental rights to AS, but concluded that termination was not in AS's best interests at that time. The trial court noted that there was no evidence that AS had been a target of respondent's abuse and that respondent had a continuing marital relationship with Sarah. Additionally, the trial court believed that reunification services could help preserve the family. The trial court continued its jurisdiction over AS, who remained in Sarah's care.

Respondent remained incarcerated in Van Buren County and, as a result of this incarceration, did not receive services. In respondent's absence from the home, AS began "acting out" and was referred to therapy to help him work through his father's absence. Respondent had no access to AS until February 2016, when the trial court agreed to allow AS to have supervised contact with respondent.

Respondent's first criminal trial in Van Buren County resulted in a mistrial in March 2016. Respondent was acquitted of the Van Buren charges following a second trial in May 2016, at the conclusion of which respondent was transported to Berrien County to resolve the charges pending there. In June 2016, respondent pleaded no-contest to engaging in the services of a minor for the purposes of prostitution, MCL 750.451(4), and attempted sodomy, MCL 750.158. Both charges related to TP. Following this plea, petitioner filed a supplemental petition to terminate respondent's parental rights. In August 2016, respondent was sentenced to time served and five years of probation. As part of his sentence, respondent was ordered to have no contact with any child under the age of 17, with the exception of supervised visitation with relatives. Upon his release, respondent obtained employment and independent housing, and did not have any contact with AS in compliance with the no-contact order.

A termination hearing was held in December 2016. The trial court received evidence that petitioner would not approve respondent having contact with AS until, at the earliest, he completed sex-offender treatment. Respondent had completed 13 weeks of a 52-week sex-offender program by the time of trial. Respondent's therapist testified that, to continue in the program, respondent was expected to disclose facts relating to his offense consistent with the presentence-investigation report. Although respondent had admitted some sexual impropriety to his therapist, respondent testified during the hearing that he did not abuse TP. Indeed, respondent indicated that he only entered the no-contest plea to avoid a substantial prison sentence. Respondent's caseworkers indicated that respondent similarly denied the abuse during their conversations. Accordingly, the caseworkers were doubtful that parenting time would ever be approved for respondent. Respondent and Sarah both testified that, once respondent was granted contact with AS, they would reunite the family in one home.

AS's counselor testified that she worked with AS on his anger, anxiety, and sadness related to respondent's absence. AS's counselor previously believed that it would not be in AS's best interests to terminate respondent's parental rights; however, she received additional information about respondent's abuse of TP that had begun to change her mind. Although she could not ultimately opine on whether termination was in AS's best interests, she believed any contact that respondent had with AS needed to be fully supervised.

The trial court ruled from the bench at a hearing in March 2017. The trial court concluded that statutory grounds existed to terminate respondent's parental rights to AS under MCL 712A.19b(3)(b)(i) and (k)(ii) on the basis of respondent's convictions and the doctrine of anticipatory neglect. The trial court also concluded that statutory grounds existed to support termination under MCL 712A.19b(3)(g) and (j). The trial court noted that respondent is subject to the no-contact order "for the continuing period of his five year probation order" and found that "without any regard to intent [respondent] cannot provide proper care and custody and would not be reasonably expected to do so within the five-year term period." Additionally, the trial court noted that, despite respondent's testimony that he posed no threat to AS because he was not attracted to men, respondent still posed a threat to AS. The trial court concluded that respondent's non-attraction to men did not render him harmless to "children of young and tender age" given the "horrific nature" of respondent's past conduct and his refusal to acknowledge that he engaged in any wrongdoing.

The trial court then turned to AS's best interests:

The Court now having determined that consistent with the pleading MCL [712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*)] having been satisfied by a standard clear and convincing evidence is required to give consideration to the best interest of the minor child, [AS]. The prosecutor in closing argument reminded the Court that indeed the Court's prior action failed to support termination. It indicated based truly, solely on the best interest finding in there previously . . . . The Court must now consider the changes that have occurred since that prior denial of termination.

The Court acknowledges that we now have convictions, as indicated. We also have a therapist who did not have information even with her most recent report that the Court considered . . . , but her testimony that now [AS] said, quote, "His sister said her father had sex with her." Even the therapist, we still don't have the context within which that was shared, whether it was [AS] and [TP] and some sibling, confidential exchange or whether it was from another adult being used to somehow exculpate the respondent-father from the conviction and allegations. Nevertheless, it is this new information that [AS] will have to process and reconcile.

Counsel for [respondent] argues that his client has been compliant and wants to move on with life. [Respondent] testified that when of age, quote, "He will certainly seek a relationship with his son."

The preponderance of the evidence . . . supports that this environment inclusive of the respondent remains inherently unfit for the minor for reasons of the cruelty, criminality and to some respect the depravity on the part of the parent that would continue to subject the minor child to risk of harm by continued exposure in that environment. Quite candidly, for as long as [respondent's] parental rights remain intact he remains poised to pursue and in any unthinkable circumstances incapacitating the non-respondent mother to step in to serve as custodial parent exercising legal authority of the minor and certainly indicated his continuing desire to commit to a relationship to his son in that situation.

As he states when of age he would seek a relationship with his son, the Court could not preclude that and would have less obligation of protection event of exposure to the respondent for [AS] as an almost adult at that time, following what would likely still have been years of counseling and therapy for [AS] to address the feelings and emotions as testified to by his counselor.

Termination does not preclude [respondent] from again being able to move on with his life and/or when of age establish some relationship with [AS].

The Court does believe that the prosecutor has met their burden [of] proof as it related to the best interest of the minor child by a preponderance of the evidence given the convictions, given the degree of I think sadness and fear and stress and anxiety that was testified to that [the minor child] is still in counseling, and anticipated to continue counseling, to address those issues, and primarily

-4-

again for his protection, to preclude barring any now unknown tragedy to occur for the [child's mother]. While hoping not, the Court has no control over that whatsoever, none of us do. And, again, absent a termination of parental rights, [respondent] would remain, poised to be, the legal parent for this minor child, which the Court being fully persuaded by the preponderance of the evidence, does not believe it's in his best interests, as supported equally by that of the foster care specialist and the guardian ad litem, and the Court believes consistent with, while the therapist indicated that "not her specialty" in terms of giving a firm recommendation at this time. For all of those reasons the Court does believe that the prosecutor has met their burden of proof.

Accordingly, the trial court terminated respondent's parental rights to AS. This appeal followed.

## II. ANALYSIS

Respondent's sole argument on appeal is that the trial court clearly erred in determining that termination of his parental rights was in AS's best interests. We disagree.

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews the trial court's decision regarding the child's best interests for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). This Court is "obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40. When the trial court considers a child's best interests, the focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (internal citations omitted). The trial court may consider the evidence on the whole record, including the evidence establishing the statutory grounds for termination, when making its best-interests determination. *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000).

Respondent argues that the trial court failed to give sufficient weight to AS's placement with his biological mother. Contrary to respondent's contention, the trial court did consider this placement when making its best-interests determination. In fact, the trial court expressed concern that respondent would become AS's custodial parent if anything ever happened to the child's mother. Moreover, "relative" is defined as a "grandparent, great-grandparent, great-great-grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above[.]" MCL 712A.13a(1)(j). Therefore, AS's biological mother was not a

statutory "relative" under MCL 712A.19a(8)(a), and the trial court was not required to consider this placement in its analysis. See *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016) (stating that "because [the child's] biological mother was not a 'relative' for purposes of MCL 712A.19a, the trial court was not required to consider that relative placement").

In addition, the trial court considered respondent's sexual-abuse convictions and the sadness, fear, stress, and anxiety that AS had already experienced with respondent's absence from the family home. With respect to the sexual abuse of AS's sibling, the trial court noted when discussing termination that a parent's treatment of one child was probative of how that parent would likely treat another child. Moreover, considering the horrific nature of the sexual abuse, the trial court believed that AS would be at risk of harm if he was reunited with respondent. While the trial court did not recount the specific instances of sexual abuse in its best-interests determination, it clearly eluded to them by reference to respondent's "convictions" just a few moments after it made its ruling with respect to the specific grounds for termination, which again are not challenged on appeal.

Based on the record in this case, we are not left with a definite and firm conviction that it was in AS's best interests to decline termination. Respondent's sexual-abuse convictions support the trial court's finding that his return to the family home would put AS at risk of harm. Furthermore, AS will have to come to terms with how respondent sexually abused AS's sibling and how those actions will affect AS's family. Termination will allow AS to grow and mature in a safe and stable environment. As such, the trial court's determination that termination was in AS's best interests was not clearly erroneous. See *In re Hudson*, 294 Mich App 261, 269; 817 NW2d 115 (2011) (concluding that all of the children would struggle dealing with repercussions of the respondent's sexual abuse and that termination "was in their best interest and was a necessary step in allowing the children to have the safety, permanence, and stability to which they are entitled").

Affirmed.


/s/ Peter D. O'Connell
/s/ Brock A. Swartzle

-6-